UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

ACE AMERICAN INSURANCE
COMPANY, a/s/o OVER THE
HORIZON CHARTERS,

    Plaintiff,

v.                                    CASE NO:

TAMPA BAY MARINE TOWING &
SERVICE, INC., d/b/a SEA TOW TAMPA
BAY,

    Defendant.
_____/

# COMPLAINT

Plaintiff, ACE AMERICAN INSURANCE COMPANY, a/s/o OVER THE HORIZON CHARTERS, by and through the undersigned attorney, sues Defendants, TAMPA BAY MARINE TOWING & SERVICE, INC., d/b/a SEA TOW TAMPA BAY, and alleges as follows:

*General Allegations Common to All Counts:*

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333.

2.    Plaintiff, ACE AMERICAN INSURANCE COMPANY, (hereinafter "ACE") is a corporation duly incorporated pursuant to the laws of the State of Pennsylvania, with its principal place of business located at Wilmington, Delaware, and is the insurer of a vessel known as SPORTINLIFE owned by OVER THE HORIZON CHARTERS (hereinafter HORIZON), under Policy Number Y07452871 as more fully described below.

3.     Defendant, TAMPA BAY MARINE TOWING & SERVICE, INC., d/b/a SEA TOW TAMPA BAY, (hereinafter "SEA TOW TAMPA") is a Domestic corporation with a place of business located at 2884 21ST Ave., North, St. Petersburg, FL 33713, and at all relevant times was and is doing business in this jurisdiction and was and is a towing and salvage company as described more fully below.

4.     Plaintiff brings this action on its own behalf and as subrogee, agent and/or trustee on behalf of and for the interest of OVER THE HORIZON CHARTERS (hereinafter HORIZON) as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

COUNT I - Negligence

5.     Plaintiff reasserts and re-alleges paragraphs 1- 4 as if fully set forth herein.

6.     On or about May 23, 2009, HORIZON's vessel was aground on a shoal just outside of John's Pass, and taking on water where the strut had been pushed up through the hull. Her Master, JERRY HUSBY, called for assistance on the VHF radio. Defendant, SEA TOW TAMPA responded with their vessel "LEADERSHIP." Shortly after SEA TOW TAMPA commenced operations, another salvor arrived and offered assistance when it became clear that further assistance was necessary. This offer of assistance was refused by SEA TOW TAMPA. Without first determining the condition and relevant facts of the situation related to "SPORTINLIFE," SEA TOW TAMPA pulled the vessel off of the shoal and into deeper water. SEA TOW TAMPA's pump then failed and the SPORTINLIFE sank shortly thereafter.

7.     Defendant, SEA TOW TAMPA owed a duty to exercise reasonable care in rendering salvage services to HORIZON and the vessel SPORTINLIFE. HORIZON initially informed SEA TOW TAMPA that the vessel had grounded and was taking on water. When SEA

TOW TAMPA arrived on the scene, SPORTINLIFE was aground and as a result was in no danger of complete submergence. The damage inflicted upon SPORTINLIFE by SEA TOW TAMPA was of an entirely different character from that which threatened the vessel prior to any salvage efforts by Defendant, SEA TOW TAMPA. Prior to the efforts of SEA TOW TAMPA, the worst that was expected in the circumstances was limited water damage to the vessel. As a result of the negligence of the Defendant, SEA TOW TAMPA, the vessel was removed from her position of relative safety and towed to a position of greatly enhanced peril, with the result that SPORTINLIFE completely submerged and was a total loss. The actual damage that occurred was a distinguishable injury from the risk to the vessel caused by the original grounding and hull breach.

8.  Defendant, SEA TOW TAMPA breached its duty of reasonable care in at least the following particulars:

a.  By undertaking a salvage effort with wholly inadequate manpower and equipment;

b.  By undertaking a salvage effort without ascertaining the nature and extent of the threat to the vessel;

c.  By undertaking a salvage effort without first taking ordinary and reasonable steps to stem the flow of water into the vessel, and to otherwise mitigate the threats to the vessel before removing her from a position of relative safety;

d.  By undertaking a salvage effort without an adequate number of pumps and/or pumps that worked, to address the amount of water likely to enter the vessel, a failure that was contributed to by the failure to mitigate the inflow of water or ascertain the quantity thereof;

e.  By failing to maintain the equipment that was placed in use aboard the vessel, which resulted in the failure of the pump that was placed in use almost immediately, with no replacement pump available;

f.  By refusing the assistance of other salvors who arrived on scene, who offered additional assistance and equipment in a timely manner that would have been capable of saving the vessel from submergence;

g.  By acting, not with the care that a prudent man ordinarily takes and exercises in keeping his own property safe, but instead with greed and avarice.

9.  The total loss of SPORTINLIFE was proximately caused by the negligence of SEA TOW TAMPA, and would not have occurred but for said negligence.

10.  The loss or damage to SPORTINLIFE did not result from any act or omission on the part of Plaintiff or use-Plaintiff, but to the contrary, was the result in whole or in part, of the negligence, gross negligence and/or fault of Defendant, SEA TOW TAMPA.

11.  Following the loss, HORIZON submitted a claim for the damages and related expenses (including subsequent salvage by later salvor) to Plaintiff insurer, ACE. Following its investigation into the matter, the insurer paid the insurance claim in the amount of $507,294.92 and became subrogated to the rights of its assured.  The insured use-Plaintiff suffered the loss of its deductible in the amount of $250.

12.  By reason of the foregoing, Plaintiff and use-Plaintiff have sustained damages in the total amount of $507,544.92.

WHEREFORE, Plaintiff prays:

That process in due form of law may issue against Defendant citing it to appear and answer all and singular the matters aforesaid; that judgment may be entered in favor of Plaintiff

and against Defendant for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action, and that this Court grant to Plaintiff such other and further relief as may be just and proper.

COUNT II - Gross Negligence

13. Plaintiff reasserts and re-alleges paragraphs 1- 4 as if fully set forth herein.

14. In the alternative to Count I, this cause of action proceeds on the assumption that the Court determines that the injury caused to the vessel is of a non-distinguishable, non-independent kind.

15. On or about May 23, 2009, HORIZON's vessel SPORTINLIFE was aground on a shoal just outside John's Pass, and taking on water where the strut had been pushed up through the hull. Her Master, JERRY HUSBY, called for assistance on the VHF radio. Defendant, SEA TOW TAMPA responded with their vessel "LEADERSHIP." Shortly after SEA TOW TAMPA commenced operations, another salvor arrived and offered assistance when it became clear that further assistance was necessary. This offer of assistance was refused by SEA TOW TAMPA. Without first determining the condition and relevant facts of the situation related to "SPORTINLIFE," SEA TOW TAMPA pulled the vessel off of the shoal and into deeper water. SEA TOW TAMPA's pump then failed and the SPORTINLIFE sank shortly thereafter.

16. Defendant, SEA TOW TAMPA owed a duty to exercise reasonable care in rendering salvage services to HORIZON and the vessel SPORTINLIFE. HORIZON initially informed SEA TOW TAMPA that the vessel had grounded and was taking on water. When SEA TOW TAMPA arrived on the scene, the vessel was aground and as a result was in no danger of complete submergence. Prior to the efforts of SEA TOW TAMPA, the worst that was expected in the circumstances was limited water damages to the vessel. As a result of the gross

negligence of the Defendant, SEA TOW TAMPA, the vessel was removed from her position of relative safety and towed to a position of greatly enhanced peril, with the result that the vessel completely submerged and was a total loss.

17. The Defendant, SEA TOW TAMPA breached its duty of reasonable care in at least the following particulars:

a. By undertaking a salvage effort with wholly inadequate manpower and equipment;

b. By undertaking a salvage effort without ascertaining the nature and extent of the threat to the vessel;

c. By undertaking a salvage effort without first taking ordinary and reasonable steps to stem the flow of water into the vessel, and to otherwise mitigate the threats to the vessel before removing her from her position of relative safety;

d. By undertaking a salvage effort without adequate pumps to address the amount of water likely to enter the vessel; a failure that was contributed to by the failure to mitigate the inflow of water or ascertain the quantity thereof;

e. By failing to maintain the equipment that was placed in use aboard the vessel, which resulted in the failure of the pump that was placed in use almost immediately, with no replacement pump available;

f. By refusing the assistance of other salvors who arrived on scene, who offered additional assistance and equipment in a timely manner that would have been capable of saving the vessel from submergence;

g. By acting, not with the care that a prudent man ordinarily takes and exercises in keeping his own property, but instead with greed and avarice.

18. The negligence of Defendant, SEA TOW TAMPA was gross negligence in careless and reckless disregard of the interests and rights of HORIZON and of the application of ordinary skill and diligence expected of a salvor, and displayed a complete lack of the degree of prudence and skill as persons acting as salvors ordinarily do possess and may be fairly expected to display.

19. The total loss of the vessel SPORTINLIFE was proximately caused by the gross negligence of SEA TOW TAMPA, and would not have occurred but for said gross negligence.

20. The loss or damage to the aforementioned vessel did not result from any act or omission on the part of Plaintiff or use-Plaintiff, but to the contrary, was the result in whole or in part, of the negligence, gross negligence and/or fault of Defendant, SEA TOW TAMPA.

21. Following the loss, HORIZON submitted a claim for the damage and related expenses (including subsequent salvage by later salvor) to Plaintiff insurer, ACE. Following its investigation into the matter, the insurer paid the insurance claim in the amount of $507,294.92 and became subrogated to the rights of its assured. The insured use-Plaintiff suffered the loss of its deductible in the amount of $250.

22. By reason of the foregoing, Plaintiff sustained damages in the total amount of $507,544.92.

WHEREFORE, Plaintiff prays:

That process in due form of law may issue against Defendant citing it to appear and answer all and singular the matters aforesaid; that judgment may be entered in favor of Plaintiff and against Defendant for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action, and that this Court grant to Plaintiff such other and further relief as may be just and proper.

COUNT III - Negligent Towing

23. Plaintiff reasserts and re-alleges paragraphs 1- 4 as if fully set forth herein.

24. In the alternative to Counts I and II, this cause of action proceeds on the assumption that the Court determines that the services were in the nature of towage, rather than salvage.

25. HORIZON had an agreement with SEA TOW TAMPA for towing assistance to the SPORTINLIFE. That agreement required the un-grounding and transport of the SPORTINLIFE to port from outside John's Pass.

26. The agreement contemplated that charges were to be based on "time, equipment and other reasonable charges."

27. On or about May 23, 2009, SEA TOW TAMPA, operating the LEADERSHIP, with the SPORTINLIFE in tow, proceeded toward port.

28. In undertaking the tow of the SPORTINLIFE, SEA TOW TAMPA warranted that it would perform its towing services in a careful, safe, prudent and workmanlike manner.

29. SEA TOW TAMPA failed to tow the SPORTINLIFE in a careful, safe, prudent and workmanlike manner and therefore breached its warranty, all to ACE and HORIZON's damage in the sum of $507,544.92, no part of which has been paid.

30. SEA TOW TAMPA's pumps failed and the vessel sank shortly thereafter. In the process the vessel was lost.

31. The sinking of the said SPORTINLIFE and damage and loss resulting therefrom was proximately caused by the SEA TOW TAMPA's negligence and unseamanlike actions and the unseaworthy condition of the vessel LEADERSHIP without any negligence on the part of ACE or HORIZON contributing thereto.

32.     ACE was compelled to pay for total loss to the SPORTINLIFE as a direct and proximate result of SEA TOW TAMPA's negligence and the unseaworthy condition of the vessel LEADERSHIP.  ACE was compelled to advance money, labor and materials for the total loss of the vessel that would not have been required but for the negligence and unseaworthiness aforesaid.

33.     By reason of the premises aforesaid, ACE and use-Plaintiff HORIZON sustained damages in the sum of $507,544.92, no part of which has been paid.

WHEREFORE, Plaintiff prays:

That process in due form of law may issue against Defendant citing it to appear and answer all and singular the matters aforesaid; that judgment may be entered in favor of Plaintiff and against Defendant for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action, and that this Court grant to Plaintiff such other and further relief as may be just and proper.

                                          BOYD & SUTTER, P.A.
                                          Attorneys for Plaintiff

10/27/09                                /s Howard T. Sutter

                                          _____
                                          Thomas A. Boyd, Jr.
                                          Florida Bar # 076272
                                          Howard T. Sutter, Esq.
                                          Florida Bar # 313971
                                          6817 Southpoint Parkway, Suite 1801
                                          Jacksonville, Florida 32216
                                          (904) 470-0110 tel
                                          (904) 470-0116 fax
                                          tboyd@boydsutter.com
                                          hsutter@boydsutter.com